WEISS, Appellee,

v.

VOICE/FAX CORPORATION et al., Appellants;

Alex et al.

[Cite as *Weiss v. Voice/Fax Corp.* (1994), 94 Ohio App.3d 309.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–920829, C–920919.

Decided March 16, 1994.

*John William Weiss, Jr.,* for appellee.

*Lindhorst & Dreidame* and *Dale A. Stalf,* for appellants.

*Per Curiam.*

These causes came on to be heard upon the consolidated appeals, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the briefs and the arguments of counsel. The court has *sua sponte* removed these causes from the accelerated calendar and placed them on the court's regular calendar.

On July 15, 1991, at the Embassy Suites Hotel in Blue Ash, Ohio, plaintiff-appellee Jack W. Weiss ("appellee") met with defendant Lorraine Lanish, a sales representative for defendant-appellant Voice/Fax Corporation ("Voice/Fax"), then known as U.S. Financial Network, Inc., a Nevada corporation. Appellee and Lanish discussed the sale of a Quarter Phone Connection Company ("QPCC") franchise to appellee. Information was given and representations were made to appellee about the franchise, some of which were contained in a "Franchise

Offering Circular." On July 26, 1991, appellee met with defendant-appellant Harmon I. Cogert ("Cogert"), president of QPCC, and defendants Alan Cogert and Lanish for a presentation about the franchise. At the conclusion of that meeting, appellee and QPCC, through Cogert, entered into a franchise agreement under which appellee was granted the right to operate a franchise in Ohio using special long-distance pay telephones developed and supplied by appellants. Appellee paid $10,900 to appellants for the franchise. The franchise agreement contained a clause which provided:

"Any controversy, dispute or claim arising out of or relating to the Agreement, or any breach thereof, shall be submitted to arbitration in accordance with the rules of the American Arbitration Association, and judgement [sic] upon any award may be entered into any court having jurisdiction, provided however, that franchisor has the right to apply to any court of competent jurisdiction for injunction or similar provisional relief. In the event that either party fails to appear at any properly noticed arbitration proceeding, award may be entered against such party notwithstanding said failure to appear. The exclusive venue for such arbitration shall be Los Angeles, California."

Subsequently, on January 8, 1992, appellee learned that the telephones rented to him pursuant to the franchise agreement could not be used in Ohio by order of the Public Utilities Commission of Ohio. Appellee returned the telephones, notified appellants that he deemed the franchise agreement terminated and demanded the return of all money paid under the agreement. Appellants disputed appellee's right to the return of his money. As a result, appellee filed the within complaint against appellants, alleging violations of the Ohio Business Opportunity Purchaser's Protection Act ("OBOPPA"), R.C. 1334.01 et seq., and fraud. Appellee alleged that appellants' violation of the OBOPPA entitled him to the relief specified in the Act, including treble damages, attorney fees, costs, and rescission of the franchise agreement. Appellee also requested punitive damages on the claim for fraud.

On June 30, 1992, appellee received a notice from the American Arbitration Association, stating that appellants had filed a demand for arbitration which alleged that appellee had breached the franchise agreement. Pursuant to the franchise agreement, the venue for the arbitration was Los Angeles, California.

Appellants answered appellee's complaint on July 20, 1992, asserting that the franchise agreement required that the controversy between the parties be submitted to arbitration. On July 23, 1992, appellants Voice/Fax and QPCC moved the trial court to stay judicial proceedings pending arbitration. Appellee opposed the motion on the ground that the OBOPPA granted him a statutory

right to cancel the franchise agreement. The trial court overruled the motion. A notice of appeal was filed by Voice/Fax and Cogert, d.b.a. QPCC, and was assigned number C–920829.

Appellee filed a motion in the trial court on November 5, 1992, requesting that the court stay the arbitration proceeding and direct appellants to assert the claim before the American Arbitration Association as a compulsory counterclaim pursuant to Civ.R. 13(A). Appellants filed another motion for a stay of the judicial proceedings and for a protective order. The court granted appellee's motion and denied appellants' motion. Appellants appealed under case number C–920919.

Appellants raise two assignments of error, which allege:

"The trial court erred to the prejudice of defendants-appellants in overruling their motion for a stay of all proceedings pending completion of arbitration;

"The trial court erred to the prejudice of defendants-appellants in granting, after defendants-appellants had perfected an appeal of the trial court's denial of their earlier motion for a stay of all proceedings pending arbitration, plaintiff-appellee's motion for an indefinite stay of said arbitration."

■ The policy of the law is to favor and encourage arbitration. *Dayton Classroom Teachers Assn. v. Dayton Bd. of Edn.* (1975), 41 Ohio St.2d 127, 132–133, 70 O.O.2d 223, 225–226, 323 N.E.2d 714, 718. Pursuant to the Federal Arbitration Act, in a transaction involving interstate commerce an agreement to settle a controversy by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Section 2, Title 9, U.S.Code. Section 4, Title 9, U.S.Code provides that where an arbitration agreement is in place and a motion to compel arbitration is filed, a court must order arbitration if "the making of the agreement for arbitration or the failure to comply therewith is not in issue."[1]

The United States Supreme Court held in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967), 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270, that if a contract contains a broadly worded arbitration clause, the question of whether the entire contract is invalid on the ground of fraud in the inducement is to be submitted to arbitration. Only if the claim is fraud in the inducement of the arbitration clause itself, "an issue which goes to the making of the agreement to

---

1. Similarly, R.C. 2711.03 provides in part:
   "The court shall hear the parties, and upon being satisfied that the making of the agreement or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement."

arbitrate," can the court proceed to adjudicate it. *Id.* at 403–404, 87 S.Ct. at 1806, 18 L.Ed.2d at 1277.[2]

State courts were expressly required to conform to the Federal Arbitration Act in *Southland Corp. v. Keating* (1984), 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1. The Federal Arbitration Act "creates a body of federal substantive law" which is applicable in state and federal courts. *Id.* A court faced with a motion to compel arbitration must first decide whether the parties agreed to arbitrate the dispute by applying the "federal substantive law of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.* (1985), 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444, 455. The court can decide only questions regarding the validity of the arbitration clause itself. If the arbitration clause is valid, the court must compel arbitration. Only if the arbitration clause itself is found to be invalid can the court consider issues concerning the validity of the entire contract. In the face of a valid arbitration clause, questions regarding the validity of the entire contract must be decided in arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co., supra,* 388 U.S. at 404, 87 S.Ct. at 1806, 18 L.Ed.2d at 1277. Even when the rights asserted by the party opposing arbitration are based upon state statutes, the provisions of the Federal Arbitration Act apply. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, supra.* "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.,* 473 U.S. at 628, 105 S.Ct. at 3354, 87 L.Ed.2d at 456.

In the case *sub judice,* the parties agreed to arbitrate "any controversy, dispute or claim arising out of or relating to the Agreement." Appellee did not challenge the validity of the arbitration clause itself. Appellee asserted a statutory right to rescind the entire contract based upon appellants' non-compliance with the OBOPPA. Appellee also asserted a cause of action for fraud in the inducement which related to the validity of the entire contract. Because appellee's claims went to the validity of the entire contract and not the validity of the arbitration clause itself, the claims should have been submitted to arbitration. The trial court erred in refusing to stay its own proceedings until completion of the arbitration process. Further, the trial court erred in granting appellee's motion to stay the arbitration proceeding. The assignments of error are sus-

---

2. The arbitration clause considered by the court in *Prima Paint* stated that "any controversy * * * arising out of this agreement, or the breach thereof, shall be settled by arbitration in the City of New York in accordance with the rules * * * of the American Arbitration Association."

tained. The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with law and this decision.

*Judgment reversed*
*and cause remanded.*

SHANNON, P.J., and DOAN, J., concur.

HILDEBRANDT, J., dissents.

HILDEBRANDT, Judge, dissenting.

I respectfully dissent. Appellee sought rescission of the franchise agreement pursuant to the OBOPPA. Appellee also alleged fraud in the inducement. Appellee did not seek to enforce rights or remedies under the franchise agreement. Actions for fraud and actions under the OBOPPA are unrelated to the contract and should not be submitted to arbitration unless the trial court first makes a determination that the franchise agreement is valid and enforceable. See *Legue v. Bill Swad Chevrolet, Inc.* (Aug. 20, 1992), Franklin App. No. 92AP–390, unreported, 1992 WL 208922. Courts have far more expertise in resolving legal issues which go to the validity of a contract. *Rolling v. Ohio State Homes Serv., Inc.* (July 14, 1993), Medina App. No. 2157, unreported, 1993 WL 261568. Where the existence of the contract containing the arbitration clause is at issue, a question of fact arises which is subject to trial. *Divine Constr. Co., Inc. v. Ohio-American Water Co.* (1991), 75 Ohio App.3d 311, 599 N.E.2d 388.

As the court stated in *Ervin v. Am. Funding Corp.* (1993), 89 Ohio App.3d 519, 522, 625 N.E.2d 635, 637:

"In light of the foregoing, we are faced with the question of whether a controversy involving the application of R.C. Chapter 1334 is a matter subject to arbitration under the parties' agreement. The issues presented by appellee's action are whether the business relationship created by appellee's contract with appellant constitutes a 'business opportunity' and whether that opportunity, as offered by appellant, failed to comply with applicable statutory provisions governing the offering of such opportunities in Ohio. It is not a question of whether either party has violated any of the agreement's provisions, a clearly arbitrable matter. Rather, the dispute is one involving the applicability of specific statutory provisions to the agreement. Under such circumstances, we do not believe that this particular dispute is referable to arbitration."

I would affirm the judgment of the trial court.